IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| MARK STEWART ALLEN,<br><br>          Plaintiff,<br><br>v.<br><br>UTAH ADMINISTRATIVE OFFICE OF THE COURTS; THE HONORABLE TONY GRAF; SHAWN MINTER, Fourth Judicial District Clerk of Court; CHRIS PALMER, Security Director for the Utah Administrative Office of the Courts; and DOES 1–20,<br><br>          Defendants. | **MEMORANDUM DECISION AND ORDER DISMISSING CASE**<br><br><br>Case No. 2:25-cv-00837<br><br><br>Judge Tena Campbell |

Before the court are two motions filed by Plaintiff Mark Stewart Allen: a Motion for Leave to Proceed in forma pauperis (IFP) (ECF No. 3) and a Motion for a Temporary Restraining Order (ECF No. 4). For the following reasons, the court denies both motions and dismisses the matter.

## FACTUAL BACKGROUND

This action derives from a long-standing dispute between Mr. Allen and a woman named A. Koehler. Because Mr. Allen's lengthy Complaint (ECF No. 1) does not provide a clear summary, the court has taken judicial notice of the state court docket and related cases. Many of the relevant facts are summarized in a decision by the Utah Court of Appeals that is described more fully below. See Koehler v. Allen, 466 P.3d 738 (Utah Ct. App. 2020). Where indicated, the court has also summarized the relevant facts from the materials provided by Mr. Allen. The

1

court provides this summary to illustrate the issues raised by Mr. Allen in his Complaint but does not take any of the facts recited by the state court as true at this stage of the litigation.

After meeting on Facebook in 2011, Ms. Koehler asked Mr. Allen to stop contacting her in July 2013.  Koehler, 466 P.3d at 740.  But Mr. Allen continued to reach out to Ms. Koehler through third parties, over email, and by sending gifts to her family.  Id.  Ms. Koehler went to the police in 2014 and 2015 and eventually sought a civil stalking injunction in April 2016.  Id.

**A.  Case No. 160400655 (Part I): Stalking Injunction**

The Utah district court granted Ms. Koehler a temporary ex parte civil stalking injunction on May 2, 2016.  Id. at 741; Koehler v. Allen, Case No. 160400655 (4th Dist. Ct. Utah).  Mr. Allen was served with that injunction on May 13, 2026.  Koehler, 466 P.3d at 741; (see also Case Dkt., Case No. 160400655, ECF No. 1-7 at 10).  The proof of service was filed with the court on May 20, 2026.  (See ECF No. 1-7 at 10.)  At the time, the relevant section of the Utah Code stated as follows:

> An ex parte civil stalking injunction is effective upon service.  If no hearing is requested in writing by the respondent within 10 days of service of the ex parte civil stalking injunction, the ex parte civil stalking injunction automatically becomes a civil stalking injunction without further notice to the respondent and expires three years from the date of service of the ex parte civil stalking injunction.

Utah Code Ann. § 77-3a-101(9) (2017).[1]

Mr. Allen did request a hearing, but not until May 26, 2016.  Koehler, 466 P.3d at 741.  He therefore made his request over ten days after he was served with the injunction, although less than ten days after the proof of service was filed.  The Utah Court of Appeals later held that

---

[1] A substantially similar provision is now codified at Utah Code Ann. § 78B-7-701(7)(c).

the injunction automatically extended for three years from the date of service because there were

no further court orders revoking or modifying the injunction:

> Allen requested a hearing on May 26, 2016.  Because the request was made more than ten days after service of the injunction, the burden shifted to Allen "to show good cause why the civil stalking injunction should be dissolved or modified." See [Utah Code Ann.] § 77-3a-101(10).  The matter was set for a one-day bench trial, but Allen's attorney moved to continue the hearing for additional discovery. For reasons not clear from the record, no hearing was ever held.  No court orders were entered revoking or modifying the injunction.

Id.; see also id. at 743 (holding that Mr. Allen was "on notice that he was required to obey the

court order until May 13, 2019").

### B.  Case No. 171402280: Prosecution and Plea for July 2017 Incident

Mr. Allen later faced multiple prosecutions and orders to show cause stemming from

allegations that he had violated the stalking injunction.  First, Mr. Allen was criminally charged

with violating the injunction in July 2017.  See State v. Allen, Case No. 171402280 (4th Dist.

Ct.); (Case Dkt. in Case No. 171402280, ECF No. 1-7-at 26).  He pled "no contest" to that

charge under the terms of a plea-in-abeyance agreement.

> During that plea hearing, Allen claimed that he "wasn't aware there … was an injunction in place" because his "former counsel … had a mental breakdown and failed to provide that documentation to [him]."  But he admitted, as the factual basis for the plea, that the State could likely prove that "with the stalking injunction in place [he] sent a package to the protected party which was in violation of that."  As a condition of the plea in abeyance, the court ordered Allen not to contact Koehler for one year.  Allen testified that he complied with the terms of his plea agreement and the criminal case was dismissed prior to December 2018.

Koehler, 466 P.3d at 741.  The docket reflects that the charges against Mr. Allen were dismissed

with prejudice.  (ECF No. 1-7 at 20.)

3

**C.  Case No. 160400655 (Part II): Contempt Order for December 2018 Incident**

Then, on December 21, 2018, Mr. Allen contacted Ms. Koehler in an email that stated, in part, "Why you have despised me and ruined my hope for happiness, unknown, but I do desire peace between our hearts … if you are willing."  Koehler, 466 P.3d at 741.  Ms. Koehler then moved for an order to show cause (in Case No. 160400655, the case in which she had originally obtained the injunction) why Mr. Allen should not be held in contempt for contacting her in contravention of the stalking injunction.  Id.

> At the hearing on the motion,
>
> Allen testified that he had been served with the injunction in 2016 but had asked his attorney to request a hearing, believing that the injunction would last only until a hearing was held.  According to Allen, his attorney later informed him that the hearing was canceled because the case had been dismissed.  Allen testified that, after speaking with his attorney, he believed the injunction was no longer in effect, but he admitted that he had never received any official court documents suggesting that the injunction had been dismissed or modified in any way.
>
> …
>
> Allen also claimed that he did not recall emailing Koehler on December 21, 2018. He testified that, on December 21, he had taken both Unisom, an over-the counter sleep aid, and trazodone, a medication that had been prescribed to Allen to treat insomnia.  Allen testified that he "woke up some 24 hours later" and recalled "[a]bsolutely nothing" from the time period during which the email was sent.

Id. at 741–42.

The district court found that Mr. Allen was in contempt of the stalking injunction and Mr. Allen appealed.  Id. at 742.  The Utah Court of Appeals agreed with the district court that Mr. Allen knew about the stalking injunction and knew that he was required to obey the injunction until May 13, 2019:

> Even assuming that Allen's attorney later misinformed him that the case had been dismissed, the injunction specified that "[n]o one except the court can change" the order and Allen admitted that he never received any official communication from the court relieving him of the responsibility to comply.

Id. at 743.  The Court of Appeals was similarly unpersuaded by Mr. Allen's argument that he believed the only order prohibiting him from contacting Ms. Koehler was the one-year order issued by the district court in Case No. 171402280, as the record made clear that the "the one-year period was not a substitute for or modification of the injunction, but a term of Allen's plea-in-abeyance agreement."  Id.

But the Court of Appeals found that the district court had not adequately addressed Mr. Allen's voluntary intoxication defense and remanded the case to the district court to determine whether Mr. Allen had acted with the requisite mental state when he emailed Ms. Koehler.  Id. at 744.

On remand, the district court found by clear and convincing evidence that Mr. Allen acted intentionally when he emailed Ms. Koehler in violation of the stalking injunction.  (Am. Findings & J. on Remand, July 22, 2020, Dkt. No. 98 in Case No. 160400655.)  As a result, the district court entered the following sanctions:

> As previously ordered Allen is in contempt of the court's Stalking Injunction. The Court imposes sanctions on Allen, including a jail term of 10 days and a fine of $300.  These sanctions are stayed to allow Allen an opportunity to purge his contempt.  Allen may purge his contempt by having no further contact directly or indirectly, in person, in writing, by email text, electronic posting to social media or in any other manner with Koehler for a period of two years.  If he successfully purges his contempt, the sanctions will be lifted.

(Id.)

Over two years later, beginning around February 8, 2023, Mr. Allen began to file multiple motions in Case No. 160400655, including a motion to delink his identifying information from the stalking injunction, and motions against Ms. Koehler and her attorney.  On November 22, 2023, the district court issued an order holding as follows:

5

> The pleadings in this case establish that it is a stalking injunction case. The injunction was issued. It has expired and the issues raised in this case are now moot. No counterclaim or third party complaint was timely filed and served before judgment was entered. There are no remaining pleadings against either party in this case. The time to appeal the trial court's decision has run and the court lack [sic] jurisdiction to consider motions except for Defendants motion to delinking his identifying information from this case.

(Order on Def.'s Mots., Nov. 22, 2023, Dkt. No. 137 in Case No. 160400655.)

The district court also granted Mr. Allen's motion to delink his identifying information, noting: "Defendant may submit an appropriate order delinking his identifying information for review and signature by the court." (Id.) The district court issued an additional order on July 2, 2025, in which it held that the documents Mr. Allen submitted were "confusing and not in the form of an order …." (Order to Remove Link between Def.'s Identifying Info. & Stalking Inj., July 2, 2025, Dkt. No. 149 in Case No. 160400655.) The district court therefore opted to prepare an order itself, in which the court ordered the Clerk of the Court to remove the link between Mr. Allen's personal identifying information and the stalking injunction. (Id.)

Mr. Allen continued to file motions and other documents in the case, including a motion to waive fees. In an order denying that motion, the court held that it no longer had jurisdiction over the matter, which had been resolved, and noted that "even if the court retains jurisdiction over the matter the movant has not provided the court with authority to grant his motion." (Order Denying Mot. Waive Fees, Aug. 4, 2025, Dkt. No. 170 in Case No. 160400655.) In another order, the court declined Mr. Allen's request that the certified Judgment rolls "be amended or corrected to include the August 4, 2016 docket entry: 'Trial Cancelled, Case Settled.'" (Order Denying Pet. Correct Certified Record, Sept. 3, 2025, Dkt. No. 181 in Case No. 160400655.) The court found that nothing in the list of documents associated with the case was inaccurate because there was "no document that memorialized the trial was canceled and the

6

case was settled.  This information is correctly reflected in the court minutes." (Id.)  The court

also declined Mr. Allen's request for "audit logs, internal correspondence, metadata, or

documentation relevant to the omission of the entry from prior certified copies" because the

court found that there was "no error that needs to be corrected." (Id.)

Mr. Allen filed a petition for reconsideration, which the state court denied on

October 21, 2025.  (Order Denying Pet. Recon., Oct. 21, 2025, Dkt. No. 206 in Case No.

160400655.)

### D.  Case No. 191400132: First Prosecution for December 2018 Incident

On January 15, 2019, in connection with the December 2018 email that Mr. Allen sent

Ms. Koehler, the Utah County Attorney's Office charged Mr. Allen with Stalking, a third-degree

felony.  State v. Allen, Case No. 191400132 (4th Dist. Ct.); (See Ruling & Order, Sept. 7, 2022,

Dkt. No. 76 in Case No. 211401656.)  The prosecutor dismissed that charge without prejudice on

October 15, 2019, in return for the following agreement with Mr. Allen:

> Mr. Allen is going to agree to waive his statute of limitations with regard to this
> case in exchange for the State's willingness to dismiss without prejudice.  And the
> agreement that the State has with Mr. Allen is that he will refrain from any kind
> of contact, direct or indirect, or even public reference to this case or the victim in
> this case.  And if he violates that, we will be able to re-file the case.

(Id. at 2.)  Mr. Allen later filed an expungement petition on August 23, 2021.  (Id.)

### E.  Case No. 211401656: Second Prosecution for December 2018 Incident

On September 16, 2021, the Utah County Attorney's Office refiled the stalking case that

it had previously dismissed without prejudice.  State v. Allen, Case No. 211401656 (4th Dist.

Ct.); (Dkt. No. 76 in Case No. 211401656 at 3.)  The State of Utah argued that Mr. Allen had

violated his agreement by filing his expungement petition.  (Dkt. No. 76 in Case No. 211401656

at 3.)  But the court disagreed, finding that Mr. Allen's agreement to refrain from any public

reference to the case did not prohibit him from filing motions within the case itself, which was a nonpublic forum. (Id. at 7–8.) The court therefore dismissed the charge without prejudice and held that the parties remained bound by the original agreement. (Id. at 8; see also Status Hr'g, Sept. 20, 2024, Dkt. No. 129 in Case No. 211401656.)

Mr. Allen later filed a motion asking the Honorable Robert C. Lunnen, the judge who presided over the status conference, to recuse because he had not signed a proposed order that Mr. Allen submitted to dismiss his case with prejudice. The court denied the motion, noting that "[t]he proposed Order submitted by Defendant for Judge Lunnen's signature contains extraneous inappropriate statements" and did not accurately reflect the court's statements at the hearing. (Order on Mot. Recuse, Mar. 5, 2025, Dkt. No. 160 in Case No. 211401656 at 3.) The court explained to Mr. Allen: "If Defendant wants Judge Lunnen to draft and sign and order stating 'This case is dismissed with prejudice,' Defendant can ask Judge Lunnen to do so." (Id.)

Instead of making this request, Mr. Allen began filing a series of motions asking for record preservation, record correction, judicial recusal, and other relief. Three weeks after Mr. Allen filed his Complaint in the action now pending before this court, the state court determined that Mr. Allen was a vexatious litigant and ordered him "to obtain legal counsel before proceeding in any pending action or before filing any future claim for relief." (Vexatious Litigant Order, Oct. 15, 2025, Dkt. No. 218 in Case No. 211401656.) To the extent that Mr. Allen could not secure counsel, the court ordered him to "obtain permission from the court before filing any paper, pleading, motion, or claim for relief in any present or future action in any court." (Id.) The order was entered by the Honorable Tony Graf, Jr., who is named as a defendant in this action. Mr. Allen maintains that Judge Graf acted outside his jurisdiction. (ECF No. 4 at 3.)

8

Mr. Allen also asserts causes of action against the Utah Administrative Office of the Courts (AOC), Shawn Minter, in his official and individual capacities as Clerk of the Fourth Judicial District Court, and Chris Palmer, in his official and individual capacities as AOC's Security Director.  Mr. Allen asserts that Mr. Minter and the AOC have refused to certify or preserve records and that Mr. Palmer retaliated against him by issuing a trespass order on June 26, 2025.  (Id. at 7, 9.)

**LEGAL STANDARD**

When a plaintiff asks to proceed IFP, that request is governed by 28 U.S.C. § 1915.  The court must dismiss an action filed by an IFP plaintiff if the court determines the action "is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief."  28 U.S.C. § 1915(e)(2)(B).  Although the court need not screen a plaintiff's complaint before granting an IFP motion, the Tenth Circuit has encouraged district courts to screen IFP cases as soon as practicable.  See Buchheit v. Green, 705 F.3d 1157, 1160–61 (10th Cir. 2012) (noting that prompt screening of IFP cases is a good practice).  "Dismissal of a pro se complaint for failure to state a claim is proper only where it is obvious that the plaintiff cannot prevail on the facts he has alleged and it would be futile to give him an opportunity to amend."  Kay v. Bemis, 500 F.3d 1214, 1217 (10th Cir. 2007) (citation omitted).

When assessing a complaint for failure to state a claim upon which relief may be granted, the court takes all well-pleaded factual assertions as true and regards them in a light most favorable to the plaintiff.  Ridge at Red Hawk L.L.C. v. Schneider, 493 F.3d 1174, 1177 (10th Cir. 2007).  But the factual allegations in a complaint must raise a plausible right to relief.  See Bell Atl. Corp. v. Twombly, 550 U.S. 544, 554–56 (2007).  A claim is facially plausible when

the plaintiff pleads enough factual content to justify the reasonable inference the defendant is liable for the misconduct alleged.  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  And while the court accepts well-pleaded factual allegations as true at this stage, the court considers "bare assertions" involving "nothing more than a 'formulaic recitation of the elements' of a constitutional … claim" as "conclusory and not entitled to" an assumption of truth.  Id. at 681 (quoting Twombly, 550 U.S. at 555).

Because Mr. Allen proceeds pro se, the court construes his pleadings "liberally" and holds him "to a less stringent standard than formal pleadings drafted by lawyers." Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991) (citation omitted).  But "[t]he broad reading of the plaintiff's complaint does not relieve the plaintiff of the burden of alleging sufficient facts on which a recognized legal claim could be based." Id.

## ANALYSIS

Mr. Allen asserts nine causes of action against the Defendants.  (ECF No. 1 at 17.)  For the following reasons, the court finds that the federal court either lacks jurisdiction to hear these claims or that Mr. Allen has failed to state a claim upon which relief may be granted.

First, Mr. Allen asserts three causes of action for violations of the federal criminal code: 1) "spoliation and record destruction" under 18 U.S.C. § 1519; 2) "Honest Services Fraud" under 18 U.S.C. § 1346; and 3) "Federal Program Fraud" under 18 U.S.C. § 666.  (Id.)  But no private civil cause of action exists for violations of the federal criminal code unless the statute explicitly provides for a civil remedy.  See Kelly v. Rockerfeeler, 69 F. App'x 414, 415 (10th Cir. 2003) (upholding the district court's dismissal of causes of action under Title 18 because "the criminal statutes do not provide for private civil causes of action").  The cited statutes do not provide for such a remedy.  Accordingly, the court dismisses these causes of action.

10

Second, Mr. Allen asserts a claim for fraud on the court.  (ECF No. 1 at 17.)  The Tenth Circuit has noted as follows:

> Generally speaking, only the most egregious misconduct, such as bribery of a judge or members of a jury, or the fabrication of evidence by a party in which an attorney is implicated will constitute a fraud on the court.  Less egregious misconduct, such as nondisclosure to the court of facts allegedly pertinent to the matter before it, will not ordinarily rise to the level of fraud on the court.

Weese v. Schukman, 98 F.3d 542, 552–53 (10th Cir. 1996) (quoting Rozier v. Ford Motor Co., 573 F.2d 1332, 1338 (5th Cir. 1978)).  Here, Mr. Allen asserts that his lawyer withheld certain evidence concerning the 2016 injunction hearing from the Utah Court of Appeals.  (ECF No. 1-7 at 46.)  These are not the kinds of allegations that rise to the level of fraud on the court.  In any event, as the court discusses further below, the court lacks jurisdiction to review the judgment of the Utah Court of Appeals.

Third, Mr. Allen alleges a conspiracy under 42 U.S.C. § 1985 and neglect to prevent that conspiracy under 42 U.S.C. § 1986.  But Mr. Allen fails to plead plausible allegations that "two or more persons" conspired to deter, "by force, intimidation, or threat," any party or witness from attending court or testifying.  42 U.S.C. § 1985(2).  At most, Mr. Allen alleges that the state court issued vexatious litigant and trespass orders against him.  But, as the court discusses further below, these orders are within the state court's discretion to ensure the regular operation of the judicial system and do not qualify as deterrence by force, intimidation, or threat.  Mr. Allen also fails to allege a violation of 42 U.S.C. § 1985(3), as he has not alleged that any violation of his civil rights was the result of racial or class-based animus.  See Tilton v. Richardson, 6 F.3d 683, 686 (10th Cir. 1993).

11

Fourth, Mr. Allen fails to state a claim for violations of <u>Brady v. Maryland</u>, as he does not allege this claim against any prosecutors and <u>Brady</u> protects a criminal defendant's right to have the prosecution disclose any material favorable to the defendant.  373 U.S. 83 (1963).

That leaves Mr. Allen's claims under the First and Fourth Amendments for denial of access to the courts and retaliation for protected conduct.  The basis for these claims appears to be Mr. Allen's allegation that the original stalking injunction issued against him expired on August 4, 2016, thereby "extinguishing jurisdiction" and rendering void the subsequent prosecutions against him.  But the state court has already considered this contention, and this court has no jurisdiction to review the state court's decision.

The <u>Rooker-Feldman</u> doctrine holds that federal district courts "lack jurisdiction to adjudicate claims seeking review of state court judgments."  <u>Bisbee v. McCarty</u>, 3 F. App'x 819, 822 (10th Cir. 2001) (citing <u>D.C. Ct. of Appeals v. Feldman</u>, 460 U.S. 462, 486 (1983); <u>Rooker v. Fidelity Trust Co.</u>, 263, U.S. 413, 415 (1923)).  That is true even if a plaintiff alleges that a state court judge has violated the Constitution.  <u>See</u> <u>Feldman</u>, 460 U.S. at 486 (finding that district courts lack jurisdiction "over challenges to state court decisions in particular cases arising out of judicial proceedings even if those challenges allege that the state court's action was unconstitutional"); <u>Van Sickle v. Holloway</u>, 791 F.2d 1431, 1436 (10th Cir. 1986) ("A federal district court does not have the authority to review final judgments of a state court in judicial proceedings; such review may be had only in the United States Supreme Court." (citing 28 U.S.C. § 1257)).

Here, the Utah Court of Appeals has already ruled that the stalking injunction against Mr. Allen remained valid for three years.  That court found as follows:

> Allen admitted that he was served with the injunction, which stated that the court order would end after three years.  The injunction was served on May 13, 2016,

12

placing Allen on notice that he was required to obey the court order until May 13,
2019.  Even assuming that Allen's attorney later misinformed him that the case
had been dismissed, the injunction specified that "[n]o one except the court can
change" the order and Allen admitted that he never received any official
communication from the court relieving him of the responsibility to comply.

Koehler, 466 P.3d at 743.

Mr. Allen disputes that finding, relying primarily on an email from a Deputy County

Attorney sent to a police officer on January 11, 2019, which references the dispute between Ms.

Koehler and Mr. Allen:

On 5/2/2016 Judge Howard issued the temporary stalking injunction on an
exparte affidavit from the Petitioner.  A return of service was filed with the court
on 5/20/2018.[2]  And the Respondent filed a request for a hearing on 5/26/2018.

The temporary stalking injunction says on it's [sic] face that it "expires in three
years."  Unfortunately 77-3a-(6)(b) of the [Utah] code explains it differently:

(6)(b)(iii) that if the respondent fails to request a hearing within 10 days of
service, the ex parte civil stalking injunction is automatically modified to a civil
stalking injunction without further notice to the respondent and that the civil
stalking injunction expires three years after service of the ex parte civil stalking
injunction[.]

…

Because Mr. Allen appeared to have filed a request for a hearing on the temporary
stalking injunction within 10 days of being served and because Judge Howard did
not indicate on 8/4/2018 that the injunction continued, I do not think that it is
valid today.

(Email from Randy Kennard to Tammy Paynter, Jan. 11, 2019, ECF No. 1 at 6.)

As a preliminary matter, the court notes that the prosecutor's email is not the smoking

gun that Mr. Allen believes it to be.  Among the other errors in the email, the Deputy County

Attorney states that "Mr. Allen appeared to have filed a request for a hearing on the temporary

---

[2] Mr. Allen argues, and the court agrees, that this date and the two that follow should read 2016
rather than 2018.

13

stalking injunction within 10 days of being served ….”  But Mr. Allen did not file his request within the 10-day period.  Instead, Mr. Allen filed his request on May 26, which was within 10 days of the proof of service filed on the docket, but over 10 days after Mr. Allen was served with the injunction on May 13.  (See ECF No. 1-7 at 10 (noting that the “Temporary Civil Stalking Injunction Service Date” was “05-13-2016” whereas the “Return: Temporary Stalking Injunction” was filed on “05-20-2016”).)  In other words, the prosecutor mistook the date of proof of service (the date the return of service was filed with the court) with the date of service (the date Mr. Allen was served with the injunction).

But even if the Utah courts got it wrong, this court lacks jurisdiction to review the opinion of the Utah Court of Appeals and the final judgment later issued by the district court on remand finding Mr. Allen in contempt of the stalking violation.  Although a federal district court may, in some circumstances, consider exculpatory evidence in the context of a habeas petition from a state prisoner appealing a state court conviction on collateral review, see 28 U.S.C. § 2254, Mr. Allen has not been convicted of any crime.  The order of the state court finding that Mr. Allen was in contempt of his stalking injunction is the type of final judgment in a civil case that this court lacks jurisdiction to review.  The proper forum for that review is the state appellate process, including a review by the Utah Supreme Court, if further review is available there, or by the United States Supreme Court on a writ of certiorari.  See 28 U.S.C. § 1257(a) (“Final judgments or decrees rendered by the highest court of a State in which a decision could be had, may be reviewed by the Supreme Court by writ of certiorari.”).  The state appellate courts are also the appropriate forum for Mr. Allen to appeal any orders related to trespass or to his designation as a vexatious litigant.

14

To the extent that any of Mr. Allen's state matters could be said to remain ongoing (given that Mr. Allen continued to file motions in two of those cases, even after the state court granted his motion to dismiss his second criminal case with prejudice), the court must abstain from exercising jurisdiction as required by Younger v. Harris, 401 U.S. 37 (1971).  Under that doctrine, "federal courts should not interfere with state court proceedings by granting equitable relief—such as injunctions of important state proceedings or declaratory judgments regarding constitutional issues in those proceedings—when a state forum provides and adequate avenue for relief."  Weitzel v. Div. of Occupational & Pro. Licensing of Dept. of Com., 240 F.3d 871, 875 (10th Cir. 2001) (citation modified).  As the Tenth Circuit has stated:

> A federal court must abstain from exercising jurisdiction when: (1) there is an ongoing state criminal, civil, or administrative proceeding, (2) the state court provides an adequate forum to hear the claims raised in the federal complaint, and (3) the state proceedings "involve important state interests, matters which traditionally look to state law for their resolution or implicate separately articulated state policies."

Amanatullah v. State Bd. of Med. Exam'rs, 187 F.3d 1160, 1163 (10th Cir. 1999) (quoting Taylor v. Jaquez, 126 F.3d 1294, 1297 (10th Cir. 1997)).  The Supreme Court has further clarified that Younger abstention applies to three categories of state proceedings: 1) state criminal prosecutions; 2) certain "civil enforcement proceedings"; and 3) "civil proceedings involving certain orders that are uniquely in furtherance of the state courts' ability to perform their judicial functions."  Sprint Commc'ns, Inc. v. Jacobs, 571 U.S. 69, 73 (2013) (quoting New Orleans Pub. Serv., Inc. v. Council of New Orleans, 491 U.S. 350, 367–68 (1989)).

Under Younger, the court must abstain from considering matters related to Mr. Allen's criminal prosecutions to the extent they remain ongoing.  And the court also abstains from considering claims related to the vexatious litigant and trespass orders issued by the state court, which are "orders and processes that lie at the core of the administration of a State's judicial

15

system and through which the state vindicates the regular operation of its judicial system[.]" Covington v. Humphries, No. 24-1158, 2025 WL 1448661, at *4 (10th Cir. May 19, 2025) (citation modified).

Finally, Mr. Allen asks for a "[w]aiver of all fees for access to certified records, consistent with Plaintiff's indigency." (ECF No. 4 at 17.)  The Supreme Court has held that criminal defendants may not be denied the right to appeal due to an inability to pay for a trial transcript.  Griffin v. Illinois, 351 U.S. 12 (1956).  But this holding does not encompass a right to obtain free state court records for any purpose, and courts have declined to hold that plaintiffs in civil cases are entitled to free transcripts on appeal.  See, e.g., Almarez v. Carpenter, 347 F. Supp. 597, 604–05 (D. Colo. 1972).  In any event, Mr. Allen's state court matters are not currently on appeal, his charges have been dismissed, and Mr. Allen has not demonstrated a need for these materials.

Because Mr. Allen fails to state a claim upon which relief may be granted, and because this court has no jurisdiction to review the state court final judgments of which Mr. Allen complains, the court need not discuss additional reasons—such as judicial immunity—why his claims are likely barred.  But given the number of legal defects that prevent Mr. Allen from seeking relief in this court, the court finds that Mr. Allen would be unable to cure the defects in his Complaint through amendment.  And "dismissal with prejudice is appropriate where, as in this case, no amendment could cure the defect in the complaint."  Serna v. City of Colo. Springs, No. 24-1149, 2025 WL 471224, at *2 n.1 (10th Cir. Feb. 12, 2025) (citing Curley v. Perry, 246 F.3d 1278, 1282 (10th Cir. 2001)).

The court therefore dismisses Mr. Allen's complaint with prejudice to the extent that the court has jurisdiction over his allegations.

**ORDER**

For the foregoing reasons, the court ORDERS as follows:

1.      The Plaintiff's Motion to Proceed in forma pauperis (ECF No. 3) and the Plaintiff's Motion for a Temporary Restraining Order (ECF No. 4) are DENIED.

2.      The Plaintiff's claims under the First and Fourteenth Amendments, to the extent they ask this court to review final judgments of the state court, are DISMISSED without prejudice for lack of jurisdiction.

3.      The Plaintiff's remaining claims are DISMISSED with prejudice for failure to state a claim upon which relief may be granted.

DATED this 2nd day of April, 2026.

BY THE COURT:

Tena Campbell
United States District Judge

17